```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/7/16
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

KATHY PEREZ-WHITE, MARTHA
SANTOS, and BARBARA
RODRIGUEZ, individually and on behalf of
others similarly situated,

                     Plaintiffs,

- against -

ADVANCED DERMATOLOGY OF NEW
YORK P.C., LAWRENCE JAEGER, and
NICOLE MAULELLA,

                     Defendants.

---------------------------------------------------------------

**ORDER**

15 Civ. 4858 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

       In this putative collective and class action, Plaintiffs Kathy Perez-White, Martha Santos, and Barbara Rodriguez assert claims against Defendants Advanced Dermatology of New York P.C., Lawrence Jaeger, and Nicole Maulella under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the New York Labor Law ("NYLL"), §§ 190 et seq., on behalf of themselves and all others similarly situated, for failure to pay overtime compensation. Plaintiffs also assert claims for failure to provide proper wage notices and statements, breach of contract, failure to pay straight time, uniform reimbursement violations, failure to pay timely wages, and retaliation.

       Plaintiffs have moved for leave to disseminate notice to potential opt-in plaintiffs, pursuant to 29 U.S.C. § 216(b). (Dkt. No. 26) For the reasons stated below, Plaintiffs' motion will be granted.

## BACKGROUND

Advanced Dermatology is a New York corporation that provides dermatological services at one location in Manhattan – 200 Central Park South – and four Bronx locations: 2100 Bartow Avenue; 291 East 149th Street; 1455 West Avenue; and 2432 Grand Concourse. (Am. Cmplt. (Dkt. No. 13) ¶¶ 3-6)  Defendant Lawrence Jaeger is the chief executive officer and sole owner of Advanced Dermatology. (Id. ¶¶ 16-20; Perez-White Decl. (Dkt. No. 28) ¶ 3)  Together with Defendant Nicole Maulella, the company's Chief Operating Officer, Jaeger supervises and manages all of the company's offices. (Perez-White Decl. (Dkt. No. 28) ¶¶ 3-4)  Defendant Maulella set the company's pay policies for all employees. (Santos Decl. (Dkt. No. 31) ¶ 5)

On November 4, 2013, Defendants hired Plaintiff Kathy Perez-White as a receptionist at their Central Park South location. (Perez-White Decl. (Dkt. No. 28) ¶ 6)  On January 3, 2014, Defendants promoted Perez-White to a site manager position at the Bartow Avenue location, where she worked until she was terminated on April 17, 2015. (Id. ¶ 7; Am. Cmplt. (Dkt. No. 13) ¶ 29)

Defendants hired Plaintiff Barbara Rodriguez to work at their Central Park South location in 2007. (Rodriguez Decl. (Dkt. No. 29) ¶ 2)  Her employment was terminated, but she returned in 2008 as an administrative assistant. (Id.)  In 2009, Rodriguez was promoted to floor manager. (Id.)  Defendants terminated Rodriguez's employment on July 7, 2014. (Am. Cmplt. (Dkt. No. 13) ¶ 43)

Defendants hired Plaintiff Martha Santos to work as a general manager in their 200 Central Park South office on January 12, 2015.[1] (Santos Decl. (Dkt. No. 30) ¶ 2) Defendants terminated Santos's employment on April 10, 2015. (Id.)

Plaintiffs Perez-White and Rodriguez were paid hourly wages (Perez-White Decl. (Dkt. No. 28) ¶ 13; Rodriguez Decl. (Dkt. No. 29) ¶ 9), while Plaintiff Santos was a salaried employee. (Santos Decl. (Dkt. No. 30) ¶ 2) Plaintiffs have submitted declarations stating that they generally worked 40 or more hours per week. (Perez White Decl. (Dkt. No. 28) ¶¶ 10-12; Rodriguez Decl. (Dkt. No. 29) ¶ 5; Santos Decl. (Dkt. No. 30) ¶ 2) Plaintiffs claim that they did not receive the hourly and overtime compensation that they were entitled to. (Perez-White Decl. (Dkt. No. 28) ¶¶ 14-17; Rodriguez Decl. (Dkt. No. 29) ¶¶ 10-12; Santos Decl. (Dkt. No. 30) ¶ 2) According to Plaintiffs, many other employees at Advanced Dermatology worked more than forty hours per week and did not receive overtime compensation. (Perez-White Decl. (Dkt. No. 28) ¶¶ 20-21; Rodriguez Decl. ¶ 15)

When Plaintiffs confronted supervisors at Advanced Dermatology about these improper wage practices, their complaints were ignored or deflected. (Perez-White Decl. (Dkt. No. 28) ¶¶ 18-19; Rodriguez Decl. (Dkt. No. 29) ¶¶ 14-15) Plaintiff Santos alleges that Defendant Maulella "change[d] employees' start and finish times" in the Defendants' timekeeping system, which "reduced . . . employee[s'] weekly hours." (Santos Decl. (Dkt. No. 30) ¶ 6)

Plaintiffs now seek leave to disseminate notice of the instant lawsuit to members of the putative collective. (Dkt. No. 26) Plaintiffs have defined the putative collective as those

---

[1] On Tuesdays, Santos "would circulate to the other offices." (Santos Decl. (Dkt. No. 30) ¶ 3)

3

individuals who "work or worked for Defendants between November 16, 2012 and the present." (Taubenfeld Decl. (Dkt. No. 27), Ex. 3 (Proposed Court-Authorized Notice) at 2[2])

Defendants oppose Plaintiffs' application, arguing primarily that (1) Plaintiffs have not sufficiently established a common unlawful policy; and (2) the proposed collective is overbroad with respect to office locations and categories of employees. (Def. Opp. Br. (Dkt. No. 32) at 9-16) In the event that the motion for court-authorized notice is granted, Defendants propose modifications to the proposed notice and the mechanics of its dissemination. (Id. at 17-23)

## DISCUSSION

### I. FLSA COLLECTIVE ACTIONS AND COURT-AUTHORIZED NOTICE

#### A. Legal Standard

Under the FLSA, an employee may sue on behalf of himself and all other employees who are "similarly situated." 29 U.S.C. § 216(b). Similarly situated employees may "opt in" to an FLSA litigation and become party plaintiffs by filing a written consent form with the court. See Damassia v. Duane Reade, Inc., No. 04 Civ. 8819 (GEL), 2006 WL 2853971, at *2 (S.D.N.Y. Oct. 5, 2006) (citing Masson v. Ecolab, Inc., No. 04 Civ. 4488 (MBM), 2005 WL 2000133, at *13 (S.D.N.Y. Aug. 17, 2005)). In contrast to class actions under Fed. R. Civ. P. 23, in FLSA collective actions, "only plaintiffs who affirmatively opt in can benefit from the judgment or be bound by it." Id. (citing Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101, 103-04 (S.D.N.Y. 2003)).

---

[2] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Filing system.

Although Section 216(b) does not explicitly address court-authorized notice to potential opt-in plaintiffs, "it is 'well settled' that district courts have the power to authorize an FLSA plaintiff to send such notice. . . ." Gjurovich, 282 F. Supp. 2d at 104 (quoting Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). Moreover, because the filing of an FLSA collective action does not toll the three-year statute of limitations as to non-named potential plaintiffs, courts routinely approve court-authorized notice in order to ensure that potential claimants understand their rights and the erosion of their claims as time passes. See, e.g., Khamsiri v. George & Frank's Japanese Noodle Rest. Inc., No. 12 Civ. 265 (PAE), 2012 WL 1981507, at *2 (S.D.N.Y. June 1, 2012) ("[C]ourt-authorized notice is appropriate[] to prevent erosion of claims due to the running statute of limitations. . . .").

Typically, "a federal court authorizes notice of the litigation to employees after making a preliminary determination that the employees who will be receiving the notice are similarly situated to the plaintiff." Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008) (citing Lynch v. United Servs. Auto Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)). Where a plaintiff meets his or her burden to demonstrate that the proposed recipients are in fact "similarly situated," the court authorizes that notice be sent to these potential opt-in plaintiffs. Lynch, 491 F. Supp. 2d at 368-69.

To demonstrate that proposed recipients of notice are "similarly situated," Plaintiffs need "make only a 'modest factual showing' that [they] and the other putative collective action members 'were victims of a common policy or plan that violated the law.'" Amendola, 558 F. Supp. 2d at 467 (quoting Realite v. Ark Rests. Corp., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)). The "modest factual showing" requirement is met where plaintiffs offer "'substantial allegations' of a factual nexus between [them] and potential opt-in plaintiffs with

5

regard to their employer's alleged FLSA violation." Davis v. Abercrombie & Fitch Co., No. 08 Civ. 1859 (PKC), 2008 WL 4702840, at *9 (S.D.N.Y. Oct. 23, 2008) (quoting Ayers v. SGS Control Servs., Inc., No. 03 Civ. 9078 (RMB) (RLE), 2004 WL 2978296, at *5 (S.D.N.Y. Dec. 21, 2004); citing Mendoza v. Casa de Cambio Delgado, Inc., No. 07 Civ. 2579 (HB), 2008 WL 938584, at *2 (S.D.N.Y. Apr. 7, 2008)). "Plaintiff's burden is minimal because the determination that the parties are similarly situated is merely a preliminary one," and that determination may be modified or vacated after discovery. Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006).

When evaluating whether court-authorized notice is appropriate, "the court does not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations." Davis, 2008 WL 4702840, at *9 (citing Lynch, 491 F. Supp. 2d at 368-69); see also Francis v. A&E Stores, Inc., No. 06 Civ. 1638 (CS) (GAY), 2008 WL 4619858, at *2 (S.D.N.Y. Oct. 15, 2008). Indeed, in considering such a motion, "[a] court need not evaluate the underlying merits of a plaintiff's claims. . . ." Damassia, 2006 WL 2853971, at *3 (citing Scholtisek v. Eldre Corp., 229 F.R.D. 381, 391 (W.D.N.Y. 2005); Gjurovich, 282 F. Supp. 2d at 105; Hoffmann, 982 F. Supp. at 262). Because courts do not weigh the merits of a plaintiff's claim, extensive discovery is not necessary at the notice stage. See Masson, 2005 WL 2000133, at *15 (noting that defendant's stated need for "extensive" discovery does "not bear on whether this case can proceed as a collective action"). To satisfy their "minimal" burden to demonstrate that they and potential opt-in plaintiffs are similarly situated, the named plaintiffs may rely on their own pleadings and affidavits, or the affidavits of potential members of the collective action. Salomon v. Adderley Indus., 847 F. Supp. 2d 561, 563 (S.D.N.Y. 2012); Anglada v. Linens 'N

Things, Inc., No. 06 Civ. 12901 (CM) (LMS), 2007 WL 1552511, at *4 (S.D.N.Y. Apr. 26, 2007).

> Plaintiffs who opt in to a collective action after a court authorizes notice do not necessarily remain parties to the action through trial. After discovery, courts typically engage in a 'second tier' of analysis to determine on a full record – and under a more stringent standard – whether the additional plaintiffs are in fact similarly situated.

Damassia, 2006 WL 2853971, at *3 (citing Morden v. T-Mobile USA, Inc., No. C05-2112 (RSM), 2006 WL 2620320, at *4 (W.D. Wash. Sept. 12, 2006); Gjurovich, 282 F. Supp. 2d at 105). "If the factual record reveals that the additional plaintiffs are not similarly situated to the original plaintiffs, the collective action is 'decertified,' and the claims of the opt-in plaintiffs are dismissed without prejudice." Id. (citing Lee, 236 F.R.D. at 197; Scholtisek, 229 F.R.D. at 387).

## B.  Analysis

### 1.  Whether Notice Should Be Disseminated

Defendants contend that Plaintiffs "have not established an unlawful common policy that violated the FLSA with respect to similarly situated employees." (Def. Opp. Br. (Dkt. No. 32) at 10)  Plaintiffs' declarations "support[] a reasonable inference that plaintiffs' experiences reflected a company-wide policy," however. Morris v. Lettire Const., Corp., 896 F. Supp. 2d 265, 270 (S.D.N.Y. 2012). The declarations demonstrate that Plaintiffs were consistently deprived of straight-time pay or overtime compensation (Perez-White Decl. (Dkt. No. 28) ¶¶ 14-17; Rodriguez Decl. (Dkt. No. 29) ¶¶ 10-12; Santos Decl. (Dkt. No. 30) ¶ 2), and that other employees "regularly complained . . . that [they] did not get paid for each of [their] hours." (Perez-White Decl. (Dkt. No. 28) ¶ 20; see also Rodriguez Decl. (Dkt. No. 29) ¶¶ 13, 15)

Moreover, Plaintiff Rodriguez states that when she and other employees confronted a general manager "about not getting paid time-and-a-half for . . . overtime hours," the general manager told them that "[Advanced Dermatology] did not have to pay time-and-a-half because [it] was a private company." (Rodriguez Decl. (Dkt. No. 29) ¶ 15)  Similarly, Plaintiff Santos alleges that Defendant Maulella, Advanced Dermatology's chief operating officer, "reduced . . . employee[s'] weekly hours" by "chang[ing] employees' start and finish times" in the timekeeping system. (Santos Decl. (Dkt. No. 30) ¶ 6)  The Court concludes that Plaintiffs' allegations are sufficient to satisfy Plaintiffs' minimal burden to demonstrate that similarly situated individuals exist.

Defendants' arguments to the contrary are not persuasive.  While Defendants contend that Plaintiffs have not established that any shaved time resulted in wages falling below the federal minimum wage (Def. Opp. Br. (Dkt. No. 32) at 9-10), "that inquiry is misplaced as those issues go to the merits of the case." Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317, 322 (S.D.N.Y. 2007); Hoffmann, 982 F. Supp. at 262 ("the Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of similarly situated plaintiffs can exist here").  Moreover, any shaved hours over forty hours a week would still support Plaintiffs' claim for unpaid overtime regardless of whether or not Plaintiffs' wages fell below the minimum wage rate.

Defendants further contend that certain conversations referenced in the declarations took place outside of the statute of limitations. (Def. Opp. Br. (Dkt. No. 32) at 11)  However, "[t]o the extent these conversations occurred outside the statute of limitations under the FLSA, they are nonetheless 'probative of [the] employer's wage and hour practices and they may corroborate the claims of more recent violations.'" Bittencourt v. Ferrara Bakery & Cafe

Inc., 310 F.R.D. 106, 115 (S.D.N.Y. 2015) (quoting Lujan v. Cabana Mgmt., Inc., No. 10-CV-755 (ILG), 2011 WL 317984, at *5 (E.D.N.Y. Feb. 1, 2011)). Defendants also complain that the declarations lack "information concerning where or when [certain] conversations occurred." (Def. Opp. Br. (Dkt. No. 32) at 12) "But courts in this district 'routinely certif[y] conditional collective actions based on the plaintiff's affidavit declaring they have personal knowledge that other coworkers were subjected to similar employer practices.'" Balverde v. Lunella Ristorante, Inc., No. 15 CIV. 5518 (ER), 2016 WL 2757430, at *3 (S.D.N.Y. May 11, 2016) (quoting Guo Qing Wang v. H.B. Rest. Grp., Inc., No. 14-CV-813 (CM), 2014 WL 5055813, at *4 (S.D.N.Y. Oct. 7, 2014)). In any event, "Defendants overstate the degree to which the affidavits here lack specificity." Id. at *4. Plaintiffs supply the names of numerous employees with whom they communicated (see Perez-White Decl. (Dkt. No. 28) ¶ 21; Rodriguez Decl. (Dkt. No. 29) ¶¶ 13-15), and the general timeframe during which relevant conversations took place. (Rodriguez Decl. (Dkt. No. 29) ¶¶ 13, 15)

Defendants also argue that Plaintiffs' putative collective is overbroad, because Plaintiffs' evidence addresses only two of Defendants' five locations, and Plaintiffs have not pled facts demonstrating that workers at these two locations are similarly situated to employees at Defendants' other locations. (Def. Opp. Br. (Dkt. No. 32) at 13-15) In Plaintiff Santos's declaration, however, she alleges that Defendant Maulella (1) "set pay policies for all of Defendants' medical offices"; and (2) instructed Santos to reduce all employees' recorded weekly hours. (Santos Decl. (Dkt. No. 30) ¶¶ 5-6 (emphasis added)) When Santos pointed out to Maulella that it is illegal to modify an employee's time records to eliminate hours actually worked, Maulella did not respond, and Defendants terminated Santos's employment a month later. (Id. at ¶¶ 8-9) Similarly, in Plaintiff Perez-White's declaration, she cites conversations she

has had with "employees [who] worked in many of Defendants' offices" regarding Defendants' alleged failure to pay overtime compensation. (Perez-White Decl. (Dkt. No. 28) ¶¶ 20-21) At this stage of the proceedings, this evidence is sufficient to justify the dissemination of notice to employees at all five locations. "Courts routinely authorize notice in FLSA actions even where potential opt-in plaintiffs work at different locations, perform somewhat different duties, and are managed by different supervisors." Grant v. Warner Music Grp. Corp., No. 13 Civ. 4449 (PGG), 2014 WL 1918602, at *7 (S.D.N.Y. May 13, 2014); see also Barry v. S.E.B. Serv. of New York, Inc., 11-CV-5089 (SLT) (JMA), 2013 WL 6150718, at *7 (E.D.N.Y. Nov. 22, 2013) (authorizing notice to nationwide putative collective where plaintiffs' evidence concerned only employees located in New York, New Jersey, and Connecticut).

Defendants also complain that "[t]here is no evidence that employees in any other positions are similarly situated to Perez-White and Rodriguez," both of whom worked as "front desk receptionists." (Def. Opp. Br. (Dkt. No. 32) at 14) However, "[c]ourts have found employees 'similarly situated' for purposes of the FLSA where they performed different job functions or worked at different locations, as long as they were subject to the same allegedly unlawful policies." Diaz v. S & H Bondi's Dep't Store, No. 10 CIV. 7676 (PGG), 2012 WL 137460, at *6 (S.D.N.Y. Jan. 18, 2012).

Plaintiffs' motion for the dissemination of court-authorized notice will be granted. Because Plaintiffs have satisfied their minimal burden of setting forth specific facts demonstrating that they are "similarly situated" to hourly non-exempt employees at all of

10

Defendants' locations, notice of this lawsuit will be provided to hourly non-exempt employees who work at, or formerly worked at, all five locations.[3]

### 2. Form of Notice

Defendants have raised a number of objections to the form of Plaintiffs' proposed notice.

Defendants first contend that the following language should be included in the notice:

> Defendants do not believe that a collective action is proper in this lawsuit and anticipate moving to decertify the collective action at the close of discovery in this matter, as they have the right to do. Defendants do not believe that Plaintiffs have demonstrated the necessary elements required to establish a collective action.

(Def. Opp. Br. (Dkt. No. 32) at 18) This request is denied. Defendants' position is adequately reflected in Plaintiffs' proposed notice, which includes the following under the heading, "What is the Defendants' position?": "The Defendants deny that they violated federal law. In particular, Defendants deny that they failed to pay all proper wages." (Taubenfeld Decl. (Dkt. No. 27), Ex. 3 (Proposed Court-Authorized Notice) at 2) This "language . . . 'adequately puts potential opt-in plaintiffs on notice of, and equitably represents, the defendants' position.'" Ritz v. Mike Rory Corp., No. 12 CV 367 (JBW) (RML), 2013 WL 1799974, at *4 (E.D.N.Y. Apr. 30, 2013) (quoting Schwerdtfeger v. Demarchelier Mgmt., Inc., No. 10 Civ. 7557 (JGK), 2011 WL 2207517, at *6 (S.D.N.Y. June 6, 2011)) (denying defendants' request to include "language

---

[3] Defendants also contend that Plaintiffs' motion for the dissemination of court-authorized notice is moot, because "Plaintiffs were offered full relief on their claims for, inter alia, unpaid wages under the [FLSA]." (Def. Opp. Br. (Dkt. No. 32) at 17) Defendants' mootness arguments are addressed in a separate order. (See Dkt. No. 50)

stating that defendants do not believe a collective action is warranted and anticipate moving to decertify the collective action at the close of discovery").

Defendants further contend that the notice should inform putative collective members that they "may be required to (1) appear for depositions; (2) respond to written discovery; (3) testify at trial; and (4) pay costs to defendants if they do not prevail." (Def. Opp. Br. (Dkt. No. 32) at 19) Although "Plaintiffs consent to including language regarding discovery and testifying at trial," they "oppose including language about costs." (Pltf. Reply Br. (Dkt. No. 34) at 12-13) "Courts in this Circuit have generally disapproved of including language indicating . . . the possible cost of litigation 'given the remote possibility that such costs for absent class members would be other than de minimis, as well as the risk of an in terrorem effect that is disproportionate to the actual likelihood of significant costs.'" Schwerdtfeger, 2011 WL 2207517, at *6 (quoting Lujan, 2011 WL 317984, at *11). Accordingly, the notice will include a statement that opt-in plaintiffs "may be required to appear for depositions, respond to written discovery, and/or testify at trial," but shall not include language regarding an obligation to pay costs.

Plaintiffs' proposed notice states that "[if] you hire your own attorney, you will be responsible for that attorney's fees." (Taubenfeld Decl. (Dkt. No. 27), Ex. 3 (Proposed Court-Authorized Notice) at 4) Defendants argue that "the notice should be revised to reflect that if the individuals retain an attorney, and if the individuals prevail in an action under the FLSA, the attorneys' fees would be paid out of a settlement fund or they could file a motion for attorneys' fees." (Def. Opp. Br. (Dkt. No. 32) at 19) Plaintiffs consent to the inclusion of such language. (See Pltf. Reply Br. (Dkt. No. 34) at 13) Accordingly, this objection is moot.

Finally, Defendants contend that opt-in notices should be made returnable to the court, rather than to Plaintiffs' counsel. (Def. Opp. Br. (Dkt. No. 32) at 20) Plaintiffs agree (Pltf. Reply Br. (Dkt. No. 34) at 13), and will modify the notice accordingly.

### 3. Mechanics of Notice

The parties disagree about certain mechanics associated with the dissemination of notice.

Plaintiffs request that a copy of the notice be posted at all of Advanced Dermatology's offices. (Pltf. Br. (Dkt. No. 31) at 21-22) Defendants oppose this request. (Def. Opp. Br. (Dkt. No. 32) at 21-22) "'Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail.'" Iriarte v. Cafe 71, Inc., No. 15 Civ. 3217 (CM), 2015 WL 8900875, at *7 (S.D.N.Y. Dec. 11, 2015) (quoting Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011)); see also id. ("'Posting notice in the workplace maximizes potential plaintiffs' opportunities to be informed of the pendency of the litigation and consider whether to opt in.'" (quoting Mendoza v. Ashiya Sushi 5, Inc., No. 12 Civ. 8629 (KPF), 2013 WL 5211839 at *9 (S.D.N.Y. Sept. 16, 2013))). Accordingly, court-authorized notice will be posted in common employee space at all Advanced Dermatology facilities.

Plaintiffs seek an order requiring Defendants to produce employee telephone numbers and email addresses, in addition to mailing addresses. (Pltf. Br. (Dkt. No. 31) at 21) Plaintiffs argue that first-class mail alone is not sufficient, because "potential opt-in plaintiffs . . . may have changed addresses since their employment with Defendants ceased." (Pltf. Reply Br. (Dkt. No. 34) at 13-14) To facilitate dissemination of notice, Plaintiffs request that Defendants

13

"be ordered to provide this [contact] information in digital format." (Pltf. Br. (Dkt. No. 31) at 21)

As to the dissemination of court-authorized notice by email, courts in this district have acknowledged that "given the reality of communications today, . . . email notice in addition to notice by first class mail is entirely appropriate." Pippins v. KPMG LLP, No. 11 Civ. 0377 (CM) (JLC), 2012 WL 19379, at *14 (S.D.N.Y. Jan. 3, 2012). Accordingly, "courts have authorized defendants to provide email address[es]." Hernandez v. Merrill Lynch & Co., No. 11 Civ. 8472 (KBF), 2012 WL 1193836, at *7 (S.D.N.Y. Apr. 6, 2012). Here, Plaintiffs are authorized to send notice via email, and Defendants are ordered to provide email addresses for potential opt-in plaintiffs to the extent that they possesses such information.

As to the request for telephone numbers, some courts in this district have rejected such requests. See, e.g., Michael v. Bloomberg L.P., No. 14 Civ. 2657 (TPG), 2015 WL 1810157, at *4 (S.D.N.Y. Apr. 17, 2015) ("[P]rivacy concerns have precluded courts from ordering the disclosure of certain personal information, including telephone numbers . . . absent a showing that a large number of the initial mailings have been returned as undeliverable.") However, in Cortes v. New Creators, Inc., the court found that disclosure of telephone numbers was appropriate as to former employees, who would not likely receive notice by other means, such as through notices posted at the employer's facility. Cortes v. New Creators, Inc., No. 15 CIV. 5680 (PAE), 2015 WL 7076009, at *4 (S.D.N.Y. Nov. 12, 2015).

Here, the potential opt-in plaintiffs include former employees of Defendants. These individuals will not receive notice through postings at Defendants' facilities, and Defendants may not have current addresses for these individuals. Accordingly, Defendants are ordered to provide telephone numbers for potential opt-in plaintiffs who are former employees to

the extent that Defendants possess such information, and all contact information shall be delivered in an electronic format.

Finally, Plaintiffs request permission to send a reminder notice to potential opt-in plaintiffs. "Given that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in, . . . a reminder notice is appropriate." Chhab v. Darden Rests., Inc., No. 11 Civ. 8345 (NRB), 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013) (citing Morris, 896 F. Supp. 2d at 275).[4]

### 4. Equitable Tolling

Defendants argue that the look-back period should be measured from the date of this Order (Def. Opp. Br. (Dkt. No. 32) at 23-24), while Plaintiffs contend that it should be measured from the date that they filed the instant motion. (Pltf. Reply Br. (Dkt. No. 34) at 12) Typically, the FLSA look-back period is measured from the date of the court's order concerning the motion for leave to disseminate notice. See Diaz, 2012 WL 137460, at *9 n.7.

> However, courts have discretion to equitably toll the limitations period in appropriate cases in order to avoid inequitable circumstances. . . . [T]he delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a[n] FLSA case, may be deemed an extraordinary circumstance justifying application of the equitable tolling doctrine. While plaintiffs wishing to pursue their rights cannot sit on them indefinitely, those whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delays in rulings.

---

[4] Plaintiffs propose that recipients of the notice be given 60 days to join the action. (Pltf. Br. (Dkt. No. 31) at 20) Defendants do not object to this time period. Accordingly, that time period will be utilized in the notice. See, e.g., Bah v. Shoe Mania, Inc., No. 08 Civ. 9380 (LTS) (AJP), 2009 WL 1357223, at *3 (S.D.N.Y. May 13, 2009) (using 60-day period); Gjurovich, 282 F. Supp. 2d at 107 (same); Bowens v. Atl. Maint. Corp., 546 F. Supp. 2d 55, 85 (E.D.N.Y. 2008) (finding courts "have held that a sixty (60)-day period is sufficient for the return of Consent Forms").

McGlone v. Contract Callers, Inc., 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) (internal citations and quotation marks omitted). Here, Plaintiffs' motion for leave to disseminate notice was served on November 16, 2015. (Notice of Motion (Dkt. No. 26) at 2) Given the length of time that the motion has been pending, the Court finds that equitable tolling is appropriate. Accordingly, the look-back period will be measured from the date the instant motion was served – November 16, 2015.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for leave to disseminate notice to potential opt-in plaintiffs is granted. Plaintiffs are authorized to disseminate notice using the form of notice approved by this Court, and Defendants are ordered to produce information regarding potential opt-in plaintiffs consistent with this order. The Clerk of the Court is directed to terminate the motion (Dkt. No. 26).

Dated: New York, New York
　　　　September 7, 2016

　　　　　　　　　　　　　　　　　　　　SO ORDERED.

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　Paul G. Gardephe
　　　　　　　　　　　　　　　　　　　　United States District Judge